PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

HOWMET AEROSPACE, INC.,                )
                                       )    CASE NO.  4:24CV1478
            Plaintiff,                 )
                                       )
      v.                               )    JUDGE BENITA Y. PEARSON
                                       )
UNITED STEELWORKERS,                   )
LOCAL 2155,                            )    **MEMORANDUM OF OPINION**
                                       )    **AND ORDER**
            Defendant.                 )    [Resolving ECF Nos. 22 and 23]


Pending in this arbitrated labor dispute is Plaintiff Howmet Aerospace, Inc.'s Opening

Brief in Support of Motion for Summary Judgment (ECF No. 22).  Plaintiff moves the Court to

vacate the Arbitration Award.  Also pending is Defendant/Counterclaim Plaintiff United Steel,

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO, CLC, Local 2155 ("Union Defendant") and Counterclaim

Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and

Service Workers International Union, AFL-CIO, CLC's ("USW International") (collectively

"USW") Motion to Confirm and Enforce the Arbitration Award (ECF No. 23).[1]  The Court has

been advised, having reviewed the record, the parties' briefs, and the applicable law.  Because

Plaintiff's case fails to meet the Sixth Circuit standards to vacate an arbitration award set forth in

---

[1]  The parties agree that the case and the matter can be resolved by a decision on cross-motions for summary judgment. *See* Report of Parties' Planning Meeting (ECF No. 16) at PageID #: 523, ¶ 9; Case Management Plan (ECF No. 17) at PageID #: 527, ¶ 12.

(4:24CV1478)

*Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746 (6th Cir. 2007) (*en banc*), the Court grants the USW's motion and denies Plaintiff's motion.

## I. Stipulated Administrative Record

The parties stipulate that ECF Nos. 21-1 through 21-8 and their descriptions in the Joint Notice (ECF No. 21) constitute true and accurate copies of the Arbitration Award issued by Arbitrator Jonathan I. Klein on June 9, 2024, along with the administrative record placed before him.  *See* Joint Notice of Filing of Stipulated Administrative Record (ECF No. 21).

## II.  Background

As part of its Howmet Structure Systems, Plaintiff owns and operates a plant in Niles, Ohio (the "Niles Facility").  To meet its quality needs, Plaintiff operates an ultrasonic testing process in its production department, in which several ultrasonic testing tanks produce digital product images that Company employees review for quality control purposes (referred to as "sonic tanks").  The USW represents approximately 450 bargaining unit members at the Niles Facility, which include a group of non-destructive testing ("NDT") inspectors within the Sonic Department, whose jobs include conducting quality reviews of images produced by the sonic tanks.

For over 25 years, a "local working condition" has prevailed in the Niles Facility under which the Company has been restricted from assigning a single NDT Inspector to simultaneously operate multiple tanks in the Sonic Department, with the exception of what are known as Tank Nos. 4 and 7 (referred herein as the "One Operator, One Tank" local working condition).  On November 26, 2019, during the term of a Collective Bargaining Agreement ("CBA"), effective

2

(4:24CV1478)

from July 1, 2018 through April 30, 2022, Plaintiff notified Union Defendant that the Company

intended to assign one inspector to operate two tanks simultaneously.  Thereafter, the Union

Defendant filed a grievance to protest the change.  An arbitration hearing was held in October

2022 before Arbitrator Andrew M. Strongin.  Thereafter, on March 31, 2023, Arbitrator Strongin

issued an Award ("Strongin Award") (ECF No. 21-4 at PageID #: 1290-1305) sustaining the

grievance.

The Strongin Award provides, in relevant part:

This record demonstrates the proper establishment of an enforceable Local
Working Condition, within the meaning of Art. II.B of the parties' Agreement, by
which a single operator may not be required to operate more than one tank at a
time, save for Tank Nos. 4 and 7, . . . .

ECF No. 21-4 at PageID #: 1300.

The Company's actions during the 25-year period addressed by the Union
evinces an acceptance that the condition would remain that way unless and until
the parties agreed otherwise, as they periodically discussed and periodically
negotiated. . . .

ECF No. 21-4 at PageID #: 1301.

Art. II.B.4 permits the change or elimination of a local working condition
when there is a change in the basis for its establishment.  Here, there is no
evidence of any such change proximate to the Company's unilateral elimination of
the condition at issue.  So far as this record shows, the Company's determination
rests on perceived business needs unrelated to the reasons for establishment and
maintenance of the condition over the years, and the Company's change of mind
is not a change in the underlying basis for the practice.  The basis for the practice
relates to the shared understanding of the safety implications of dividing an
inspector's attention, and so far as this record shows that concern is as legitimate
today as it was when the practice began.

ECF No. 21-4 at PageID #: 1303-1304.

(4:24CV1478)

In negotiations for a new CBA, Plaintiff made clear that it wished to eliminate the "One Operator, One Tank" local working condition.  Union Defendant resisted and had the Sonic Department removed from the flexibility documents.  *See* Transcript of Arbitration Proceedings (ECF No. 21-3) at PageID #: 1229-31.  The parties' bargaining produced a Tentative Agreement ("TA") List, dated June 30, 2023.  That agreement, reached almost three months after the parties received the Strongin Award, contains a new provision, titled "Flexibility" (the "Flexibility Provision"), which memorializes Plaintiff's rights with respect to operational work assignments throughout the Niles Facility.  It states, in pertinent part:

**Flexibility:**

**Guiding Principles of Flexibility**

The parties recognize the importance of maximizing the effectiveness and efficiency of our workforce.  In doing so, they agree that our ability to adapt will create a competitive advantage ultimately leading to the long-term business success and employment security of the Niles location.

To document the intent of the parties, **product mix, process improvements, and demand shall** determine staffing levels, crew sizes, shift schedules and the decision to safely operate with available manpower on crew-based jobs.

**Departmental Flexibility**

Effective in implementing this language, the Company will move the employee as required within the department in which they accrue seniority for making such job assignments.  The Company representative will do so only if the employee is qualified and trained to safely perform the job they are being moved to.

Employees subject to intradepartmental assignments **as listed below**, will be paid the higher of either their existing rate or the rate of the job assigned.  Additionally, employees will receive either their existing incentive rate or the highest incentive rate for the role of which they are moved to.

4

(4:24CV1478)

> Management commits **to jointly creating a training matrix and the company will maintain the upkeep of the training logs[ ]** when making assignments, it must do so considering the safety and health of its employees; adequate training; fair and equitable application of this language; and appropriate compensation for job assignment as a result of this article.

ECF No. 21-4 at PageID #: 1309 (bold in original; brackets added).

Plaintiff and the USW are parties to a CBA, effective from July 1, 2023 through June 30, 2027. It provides, in pertinent part:

### ARTICLE III – MANAGEMENT

> The Company retains the exclusive rights to manage the business and plant and to direct the working forces. The Company, in the exercise of its rights, shall observe the provisions of this Agreement.
>
> The rights to manage the business and plant and to direct the working forces include the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legitimate reasons.

ECF No. 21-2 at PageID #: 1574. Plaintiff's broad Article III rights are subject to "local working conditions," defined in Article II.B. of the CBA:

> **Section B. Local Working Conditions**
>
> The term "local working conditions," as used herein, mean specific practices or customs which reflect detailed application of the subject matter within the scope of wages, hours of work, or other conditions of employment and includes local agreements, written or oral, in such matters.
>
> \* \* \*
>
> 3. Should there be any local working conditions in effect which provide benefits that are in excess of or in addition to the benefits established by the Agreement, they shall remain in effect *for the term of this Agreement*, except as they are changed or eliminated by mutual agreement or in accordance with Paragraph 4 following.

ECF No. 21-2 at PageID #: 1572-73 (emphasis added).

(4:24CV1478)

On August 3, 2023, Plaintiff's Human Resources Manager notified Union Defendant that it would begin assigning sonic operators to multiple sonic tanks.  Specifically, Plaintiff wrote:

> This is a follow up letter regarding the conversations between the Company and the Union about the sonic department.  Effective August 4, 2023, the company will assign sonic operators to operate multiple tanks in accordance with the recently negotiated flexibility language below:
>
> ***Guiding Principles of Flexibility***
>
> *The parties recognize the importance of maximizing the effectiveness and efficiency of our workforce.  In doing so, they agree that our ability to adapt will create a competitive advantage ultimately leading to the long-term business success and employment security of the Niles location.*
>
> *To document the intent of the parties, **product mix, process improvements, and demand shall** determine staffing levels, crew sizes, shift schedules and the decision to safely operate with available manpower on crew-based jobs.*
>
> Should the union believe that this agreed upon change warrants further discussion of the classification's hourly rate as discussed during negotiations, please provide dates and times you would be available to meet with location management.

Letter (ECF No. 21-4 at PageID #: 1282) (bold and italics in original).  On the next day, the President of Union Defendant responded as follows:

> This is in response to the letter/meeting that the Company gave/held on August 3, 2023 where the Union was informed that the Company was going to implement the running of two sonic tanks by one inspector in the Sonic Department again.
>
> The Union strongly disagrees with the Company position and this decision.  There is an Arbitration Decision that defined a Local Working Condition "of assigning one NDT Inspector to one tank in the Sonic department."[ ]  There is nothing in the new agreement that does away with this decision.  Sonic and the running of two tanks with one inspector was discussed during negotiations with the Parties never coming to any agreement in that area.  In negotiation the company also made multiple proposals to sunset all agreements that were not in the Labor Agreement, this too was removed as a proposal and never agreed to by the Parties.

(4:24CV1478)

> Your letter reference[s] "negotiated flexibility language below:" [I]n doing so you are only showing part of the agreement, which leads to deception and misinterpreting. This is about a three-page agreement with the areas listed to where and how this language applies to those area[s]. Sonic was taken out of this agreement because the Parties could not come to an agreement on it. The last paragraph where you state "agreed upon change" is a false statement, there has been no agreement. Without an agreement in place an "hourly rate" discussion is irrelevant.
>
> The Union is requesting the Company to immediately stop ordering the Sonic Inspectors to run two tanks.

Letter (ECF No. 21-4 at PageID #: 1283) (brackets added).

On August 7, 2023, Union Defendant filed a grievance to protest the change in the Sonic Department implemented by Plaintiff. The grievance stated: "Company is forcing Sonic to run multiple tanks. We have a[n] Arbitration Ruling that states one person on tank." Union Defendant requested the following remedy: "Company cease and desist from violating the Arbitration ruling." Grievance Report (ECF No. 21-4 at PageID #: 1284) (brackets added).

An arbitration hearing was held on January 31, 2024 before Arbitrator Jonathan I. Klein. *See* ECF No. 21-3. The issue before Arbitrator Klein was: "Did the Employer violate the terms of the contract when it implemented a change to the Sonic NDT Inspector classification on August 4, 2023, to include the assignment of an employee in the Sonic Department to simultaneously operate multiple sonic inspection tanks? If so, what shall be the remedy?" Opinion and Award (ECF No. 21-1) at PageID #: 822. Thereafter, on June 9, 2024, Arbitrator Klein issued ECF No. 21-1 sustaining the grievance in favor of Defendant Union. He summarized his reasoning as follows:

> . . . the arbitrator determines that the Union proved by a preponderance of the evidence that the Employer violated Article II.B.3. of the collective bargaining

7

(4:24CV1478)

> agreement when it unilaterally changed the established local working condition in the Sonic Department that had been upheld in the arbitration award by Arbitrator Strongin and *continued into the new agreement.*  The record is lacking probative evidence that the parties manifested mutual assent to eliminate the local working condition in the Sonic Department of one operator to one tank.  There is no evidence of mutual agreement on employing the guiding principles of flexibility to override the local working condition at issue, as each side knew or had reason to know the materially different meanings each gave to the TA on flexibility as applied to the Sonic Department.  No agreement on this issue was reached, and the pre-existing local working condition remained unaltered.  Accordingly, the grievance is sustained as set forth in the Award.

ECF No. 21-1 at PageID #: 870 (emphasis added).  Arbitrator Klein "determine[d] that the broad language contained in the Flexibility Agreement does not override the contractual provisions contained in Article II.B of the collective bargaining agreement and the specific, well-established local working condition that an Inspector in the Sonic Department may not be required to operate more than one tank at a time, with the exception of Tank Nos. 4 and 7." ECF No. 21-1 at PageID #: 842 (brackets added).

On August 28, 2024, Plaintiff filed a Complaint to Vacate and Remand Arbitration Award (ECF No. 1) under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), as amended.  On December 31, 2024, the USW filed an Amended Counterclaim Seeking Confirmation and Enforcement of the Klein Award (ECF No. 18 at PageID #: 535-40).

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

(4:24CV1478)

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on its pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248.  The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary

9

(4:24CV1478)

judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Anderson*, 477 U.S. at 248.  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*  This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party.  *United Food & Commercial Workers Union Local No. 17A v. Hudson Ins. Co.*, No. 5:11CV2495, 2012 WL 2343905, at *2 (N.D. Ohio June 20, 2012) (Pearson, J.).

## IV.  Analysis

A court's review of an arbitration award in a labor dispute is "extremely limited."  *Shelter Distrib., Inc. v. Gen. Drivers, Warehousemen & Helpers Loc. Union No. 89*, 674 F.3d 608, 611 (6th Cir. 2012) (citation omitted).  "[J]udicial consideration of the merits of a dispute is the rare exception, not the rule."  *Mich. Fam. Res.*, 475 F.3d at 753 (brackets added).  A court's review of an arbitration award "is deferential, especially so when it comes to challenges to the merits of an arbitrator's interpretation of the agreement."  *Zeon Chems., L.P. v. United Food & Com. Workers*, 949 F.3d 980, 982 (6th Cir. 2020) (citing *Mich. Fam. Res.*, 475 F.3d at 750-52).

(4:24CV1478)

"[U]nless the arbitrator (1) committed fraud or other dishonesty, (2) resolved a dispute the parties did not submit to him, or (3) did not arguably interpret and apply the collective bargaining agreement," a court will uphold the award.  *See Zeon Chems.*, 949 F.3d at 982-83 (citing *Mich. Fam. Res.*, 475 F.3d at 751-52)); *AWP, Inc. v. Int'l Assoc. of Machinists and Aerospace Workers,* No. 5:24CV1995, 2026 WL 120216, at *3 (N.D. Ohio Jan. 16, 2026) (granting union's motion for summary judgment and motion to confirm and enforce arbitration award).  The record does not contain any evidence suggesting the Klein Award (ECF No. 21-1) was the product of fraud, a conflict of interest, or dishonesty, and Plaintiff does not make such a claim.

Plaintiff relies on *Monongahela Valley Hosp., Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195 (3rd Cir. 2019), to support its request that the Court vacate the Klein Award (ECF No. 21-1) and that summary judgment be granted in its favor.  In *Monongahela*, the Court of Appeals for the Third Circuit held "[w]here an arbitrator injects a restriction into a contract to which the [employer] did not agree and to which the bargaining unit employees are not entitled, he dispenses his own brand of industrial justice and [the award] should be overturned."  946 F.3d at 201 (citations omitted).

Plaintiff argues the broad new language in the Flexibility Provision permitted the Company to make work assignments based on business needs in all departments, including tank assignments in the Sonic Department.  According to Plaintiff, ECF No. 21-1 did not construe or apply the relevant provisions of the parties' CBA (ECF No. 21-2) and is contrary to the plain language of the agreement and the new Flexibility Provision (ECF No. 21-4 at PageID #: 1309).

11

(4:24CV1478)

*See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (an

arbitrator "may not ignore the plain language of the [CBA]").  Plaintiff claims ECF No. 21-1

contradicts the plain language of Article II.B. of the CBA, which required the Company to

maintain an established local working condition only "for the term of th[at] Agreement."

Plaintiff maintains that while Article II does prohibit it from unilaterally modifying or

eliminating an established local working condition during "the term of th[e] Agreement," it does

not prohibit the Company from unilaterally eliminating the local working condition after the

CBA expires or terminates.  The CBA, effective from July 1, 2018 through April 30, 2022,

however, never expired because the parties extended it before it terminated.  Michael C.

McAdoo, on behalf of Plaintiff, declared the following during his opening statement at the

arbitration hearing:

> In February 2021, the parties negotiated a two-year extension to the
> agreement, 2018 labor agreement.  That extended labor agreement was set to
> expire on April 30th, 2024.  The parties mutually agreed to commence early
> negotiations for a renewal of that extended 2018 labor agreement in April 2023.
> On June 30th, 2023, the parties reached a tentative agreement, and that agreement
> renewal was ratified on July 10th, 2023.

ECF No. 21-3 at PageID #: 1071-72.  And the "One Operator, One Tank" local working

condition was still in effect when the CBA (ECF No. 21-2) became effective on July 1, 2023.

Second, even if the 2018 labor agreement had expired, its successor still protected "local working

conditions."  *See* Article II.B.3. of the 2023 Labor Agreement (ECF No. 21-2 at PageID #: 1573).

Plaintiff contends that instead of arguably construing or applying the plain language of

the Flexibility Provision (ECF No. 21-4 at PageID #: 1309), Arbitrator Klein relied solely on

extrinsic evidence – specifically, the parties' discussions during bargaining, their bargaining

12

(4:24CV1478)

notes, and other bargaining history – to conclude that the new Flexibility Provision did not cover the Sonic Department where the One Operator, One Tank local working condition had applied. As courts have made clear, "an arbitrator . . . has no authority to consult extrinsic evidence" when the terms of the CBA are unambiguous. *Dematic Corp. v. Int'l Union, United Auto. Aerospace, & Agr. Implement Workers of Am. (UAW)*, 635 F. Supp.2d 662, 677-78 (W.D.Mich. 2009) (reversing an arbitrator who considered the parties' prior course of dealing and alleged oral agreements to overrule the clear language of the contract).  But *Dematic Corp.* is distinguishable from the case at bar because Arbitrator Klein engaged in no such deviation from the CBA's (ECF No. 21-2) language.  Arbitrator Klein considered specific language found in ECF No. 21-2 and general language found in a side agreement, *i.e.*, TA List, dated June 30, 2023 (ECF No. 21-4 at PageID #: 1306-11), to reach his conclusion that "the Union proved by a preponderance of the evidence that the Employer violated Article II.B.3. of the collective bargaining agreement when it unilaterally changed the established local working condition in the Sonic Department that had been upheld in the arbitration award by Arbitrator Strongin and continued into the new agreement."  ECF No. 21-1 at PageID #: 870.  Moreover, the Sixth Circuit has stated "[i]t is well established that a decision need not be vacated if an arbitrator considered extrinsic evidence as part of a good-faith attempt to interpret a contract."  *Browning-Ferris Indus. of Ohio, Inc. v. Int'l Bhd. of Teamsters, Loc. Union No. 20*, No. 20-4073, 2022 WL 684579, at *5 (6th Cir. March 8, 2022) (citations omitted).

"In attempting to clarify the line between an award that permissibly 'draws its essence from the contract' and one that impermissibly 'reflect[s] the arbitrator's own notions of industrial

(4:24CV1478)

justice," the Sixth Circuit notes that the Supreme Court gave this guidance:  "[A]s long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Mich. Fam. Res.*, 475 F.3d at 752 (quoting *Misco*, 484 U.S. at 38) (emphasis added). "[O]nly when the arbitrator strays from interpretation and application of the agreement" does he enter the forbidden world of "effectively 'dispens[ing] his own brand of industrial justice,'" making the arbitrator's decision unenforceable. *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001) (brackets added; citation omitted).  Consequently, "[s]o long as the arbitrator purported to construe the contract, that is the end of the matter." *Mich. Fam. Res.*, 475 F.3d at 753.  Because Plaintiff fails to show that Arbitrator Klein did not "even arguably" construe or apply the CBA (ECF No. 21-2), this is not a case involving those very limited circumstances that would permit the Court's review of the merits of the Award (ECF No. 21-1). Arbitrator Klein never strayed from interpreting and applying the CBA, and for that reason the Award will be confirmed and enforced.

## V.  Conclusion

Viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, the Court concludes that there is no genuine issue of material fact and the USW is entitled to a judgment as a matter of law.  For the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which the USW relies, Defendant/Counterclaim Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Local 2155

(4:24CV1478)

and Counterclaim Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC's Motion to Confirm and Enforce the Arbitration Award (ECF No. 23) is granted and Plaintiff Howmet Aerospace, Inc.'s Motion for Summary Judgment (ECF No. 22) is denied.  Final judgment will be entered in favor of the USW and against Plaintiff.


        IT IS SO ORDERED.


   March 20, 2026              /s/ Benita Y. Pearson
Date                          Benita Y. Pearson
                              United States District Judge